## DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. THOMAS AND ST. JOHN

**UNITED STATES OF AMERICA,**

                **Plaintiff,**

   **v.**

**YAMINI POTTER**

                **Defendant.**

_____

3:20-mj-00061

**TO:**    Matthew A. Campbell, Esq., FPD
         Alessandra Parisi Serano, Esq., AUSA

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the government's Motion to Revoke Defendant's Communication Privileges (ECF No. 7), Defendant Yamini Potter's Response to Motion to Revoke Ability to Communicate (ECF No. 16), and the government's Reply to Defendant's Opposition to Motion to Revoke Defendant's Communication Privileges (ECF No. 19).

### I.    BACKGROUND

On August 11, 2020, the government filed a criminal complaint against Potter for 80 counts of wire fraud, 2 counts of impersonating an officer of the United States, 1 count of obstruction of justice, 2 counts of acting in assumed character, and 1 count of grand larceny.[1] Soon after, the government moved for an emergency no-contact order because

---

[1] This criminal complaint is filed under case number 3:20-mj-00052 as ECF No. 1.

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 2

Potter contacted victims while posing as someone else in order to obtain funds.[2] On August 28, 2020, the Court granted the government's motion and prohibited Potter from contacting, either directly or through other persons, any of the individuals named in the criminal complaint.[3]

Nearly a month later, the government filed a second criminal complaint against Potter for criminal contempt and obstruction of justice (ECF No. 1). The government then moved to revoke Potter's communication privileges because he allegedly assumed the identities of Virgin Islands Attorney General Denise George, U.S. Magistrate Judges Ruth Miller and George W. Cannon, Jr., Former Lt. Gov. Osbert Potter, and former District Court Judge Curtis Gomez, to obtain money from victims to fund a fictitious lawsuit (ECF No. 7 at 1-2). The government's motion also alleged that Potter, acting as Attorney General George, threatened to kill anyone who testified against him. *Id*. at 2.

At the September 24, 2020 hearing, the government clarified that it moved to revoke access to public phones in the Bureau of Corrections as opposed to designated phones to contact counsel.[4] The Court also continued the matter to October 5, 2020 to allow the parties to fully brief the government's Motion to Revoke Defendant's Communication Privileges (ECF No. 7), and restricted Potter "from using the prison's

---

[2] This motion for an emergency no-contact order is filed under case number 3:20-mj-00052 as ECF No. 14.
[3] This order granting an emergency no-contact order is filed under case number 3:20-mj-00052 as ECF No. 15.
[4] In addition, the government submitted a reply after the September 24, 2020 hearing, stating that it modifies its motion by clarifying that it does not seek "to preclude communication with his counsel of record using [Bureau of Corrections's] designated attorney phones or other approved means" (ECF No. 19 at 1) (i.e., Motion to Revoke Defendant's Communication Privileges Modified by the Clarification).

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 3

telephone or other means of outside communication [, but allowed] communication with counsel only" (ECF No. 18) in the interim period (i.e., interim order).[5]

Potter then moved to vacate this Court's no-contact order imposed a month earlier (ECF No. 24), as well as to amend the Court's interim order imposed on September 24, 2020 (ECF No. 22).

On October 5, 2020, this Court heard arguments on, *inter alia*, the government's Motion to Revoke Defendant's Communication Privileges and took the matter under consideration.

Before deciding the motion in question, the Court issued a Memorandum Opinion and Order (ECF No. 34) denying Potter's Motion to Vacate the August 28th No-Contact Order (ECF No. 24) and denying his Motion to Amend the September 24th Interim Order (ECF No. 22). The Court now considers the government's Motion to Revoke Defendant's Communication Privileges (ECF No. 7).

## II.     THE PARTIES' POSITIONS

As a result of Potter's alleged "violation of the Court's prohibition on [his] use of the phone to contact the named victims" in the criminal complaint, the government moves to revoke Potter's "phone access and require him to communicate with his counsel in person, online, or in writing" (ECF No. 7 at 4).

---

[5] The Court entered the interim order to remain effective until it decides the government's Motion to Revoke Defendant's Communication Privileges (ECF No. 7).

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 4

Potter opposes the government's Motion to Revoke Defendant's Communication Privileges for several reasons (ECF No. 16). First, Potter asserts that the motion lacks factual support because he has denied allegations in the second criminal complaint and in the motion itself, so he is presumed innocent despite those allegations (ECF No. 16 at 1). Second, Potter details a list of less burdensome means of satisfying the government's concerns rather than prohibiting Potter's access to the phone. *Id*. at 2.[6] Third, Potter argues that the government's motion violates his Sixth Amendment rights because it denies him effective assistance of counsel. *Id*. at 5. Potter adds that preventing him from communicating with his counsel in person, online, or in writing is not possible. *Id*.[7] Fourth, Potter posits that restricting his phone access imposes impermissible punishment during pretrial detention. *Id*. at 6-7.

---

[6] The non-exhaustive list of less burdensome means proposed by Potter include:
"a. Having the witnesses referenced in the government's motion place a block on jail calls so that their phone lines will not accept calls from the jail;
b. Placing a block on the witness phone numbers on the jail line so that the jail line cannot be used to call those numbers;
c. Restricting Mr. Potter's phone privileges by disallowing him from dialing calls himself and having jail personnel dial the phone for him;
d. Restricting Mr. Potter's phone privileges by only allowing him to call certain approved phone numbers, including attorney-client calls which are not to be recorded; and
e. Visually monitoring Mr. Potter's phone calls to ensure that he does not improperly end a call and dial a new call himself"
*Id*.
[7] As to communication in person, Potter argues that he is detained in Saint Thomas and the jail is not allowing any in-person visits, including visits by counsel, because of COVID-19, so in-person visits cannot substitute attorney-client phone calls. *Id*. As to online communication, Potter asserts that, from information and belief, the Saint Thomas Bureau of Corrections facility does not offer online communication to inmates, so online communication cannot substitute attorney-client phone calls. *Id*. As to written communication, Potter notes that this mode of communication cannot completely replace spoken communication for the purposes of facilitating an effective attorney-client relationship. *Id*. at 5-6. Potter concludes that even if written communication could replace spoken communication, this substitute cannot guarantee his Sixth Amendment rights and guarantees because of his education level. *Id*. at 6.

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 5

The government replies that it no longer seeks "to limit Potter's ability to personally speak with [Bureau of Corrections's] staff while he is housed at the BOC or to preclude communication with his counsel of record using the designated attorney phones or other approved means" (ECF No. 19 at 1). The government also details that there are two types of phones at the Bureau of Corrections: (1) unrecorded phones arranged by staff for inmates to contact counsel, and (2) recorded public phones for inmates to contact anyone they wish. *Id.* at 2. The government clarifies that it moves to revoke Potter's use of the second type of phones at the Bureau of Corrections because of "his flagrant disregard [for] the Court's no contact order." *Id.* The government also replies that Potter's opposition focuses on restricting phone communication with his counsel, which is now irrelevant. *Id.* The government continues that Potter's non-exhaustive list now suggests that less restrictive means could be used to oversee communications with persons other than his counsel, but these options unduly burden victims and the Bureau of Corrections. *Id.*[8]

At the September 24, 2020 hearing, which occurred before the government filed its reply, the government clarified that it moved to restrict Potter's phone privileges with anyone else but his counsel. *Audio Transcript of Hearing*, September 24, 2020 at 10:12:35

---

[8] The government narrates two examples of how Potter's non-exhaustive list would unduly burden the victims and the Bureau of Corrections. First, requiring the victims to block jail calls from their phone lines, or the Bureau of Corrections from placing a block on Potter calling the victims' phone numbers on the jail line, would constitute an undue burden. *Id.* Second, requiring Bureau of Corrections's staff to visually monitor what numbers Potter dials from the public phone would be unreasonable considering the various responsibilities of staff. *Id.* The government concludes that the onus should be on Potter to obey the Court's no-contact orders, and his unwillingness or inability to comply justifies granting its motion to revoke the privilege to use public phones. *Id.* at 2-3.

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 6

to 10:13:05. The government detailed that, after speaking with the warden, it discovered that Potter could use a designated attorney phone in which calls were initiated by Bureau of Corrections's staff. *Id*. at 10:39:59 to 10:40:30.

At the October 5, 2020 hearing, Potter argued that there are numerous jurisdictional issues in granting the motion to revoke communication privileges and revoking communication privileges intertwines with the no-contact orders. *Audio Transcript of Hearing*, October 5, 2020 at 9:28:54 to 9:29:06. Potter then argued against the Court imposing no-contact orders enforceable during pretrial detention. *Id*. at 9:29:07 to 9:33:15. Potter concluded that since the no-contact orders the Court imposed were unlawful, the motion to revoke communication on invalid orders lacks merit. *Id*. at 9:33:16 to 9:33:38. The government clarified that if the Court granted the motion to revoke communication privileges, Potter would still be allowed to receive calls from the public because it cannot stop third parties from calling him; the government moves to preclude Potter from initiating calls to victims in the criminal complaint as opposed to stopping third parties from calling him. *Id*. at 9:36:32 to 9:37:19.

### III.     DISCUSSION

**A. Restricting Potter's Access to Use Public Phones Does Not Constitute Impermissible Punishment During Pretrial Detention**

As a threshold matter, the Court first examines whether restricting Potter's access to use public phones at the Bureau of Corrections constitutes impermissible punishment during pretrial detention. In *Bell v. Wolfish*, 441 U.S. 520 (1979), a seminal case involving

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 7

the rights of pretrial detainees, the Supreme Court admonished that punishment cannot be inflicted on pretrial detainees before adjudication of guilt under the Due Process Clause. 441 U.S. at 535. The Supreme Court also decided that along with determining whether a condition of confinement constituted punishment, courts must distinguish between impermissible and permissible measures of confinement:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose….If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id*. at 538-39 (internal citations and quotations omitted).

Here, the government moves to revoke Potter's communication privileges, except for communication with his counsel, because he continues to contact the victims alleged in the criminal complaint even after this Court imposed a no-contact order.[9] The Court construes revocation of Potter's communication privileges as a restriction or condition that would have a punitive effect on him. The next inquiry under *Bell*, however, is whether revoking Potter's communication privileges furthers a legitimate government objective like resolving a specific institutional violation not excessive in comparison to the seriousness of his violation. *See Bell*,

---

[9] This order granting an emergency no-contact order is filed under case number 3:20-mj-00052 as ECF No. 15.

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 8

441 U.S. at 538-39. The Court finds that revoking Potter's communication privilege to use public phones in the Bureau of Corrections furthers a legitimate government objective to protect the victims in the criminal complaint while Potter is in pretrial detention. Potter's violation is particularly excessive considering that he has allegedly violated this Court's no-contact order by continuing to contact and threaten the victims in the criminal complaint; restricting Potter's communication privileges would not be excessive in comparison to protecting victims in the criminal complaint amidst his flagrant disregard for this Court's no-contact order. Although revoking Potter's communication privileges results in a punitive effect, this condition or restriction is constitutional under *Bell* because it furthers a legitimate government objective. Accordingly, restricting Potter's access to use public phones at the Bureau of Corrections does not constitute impermissible punishment during pretrial detention.

    **B. Revoking Potter's Communication Privileges Does Not Violate His Sixth Amendment Right to Effective Assistance of Counsel**

The Court must next determine whether revoking Potter's communication privileges would result in a violation of his Sixth Amendment right to effective assistance of counsel.

Under the Sixth Amendment, "in all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defense." U.S.CONST. Amend. VI. A court in the Third Circuit dismissed a complaint against an inmate who

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 9

alleged that revoking his telephone privileges violated his right to counsel. *Barr v. Levi*, No. 06-4683, 2007 U.S. Dist. LEXIS 34796, at *3-4 (W.D. Pa. May 11, 2007). In that case, the inmate could communicate with his attorney in person or in writing, so the court dismissed the Sixth Amendment claim. *Id*. at 3-4.

Here, the Motion to Revoke Defendant's Communication Privileges Modified by the Clarification does preclude Potter from communicating with his counsel on designated phones at the Bureau of Corrections, in person, or in writing. Although the Saint Thomas Bureau of Corrections facility does not allow visitors because of the COVID-19 pandemic, Potter could still communicate with his counsel on designated phones or in writing. Even if the option to communicate in writing does not facilitate an effective attorney-client relationship, Potter still has the option to communicate with his counsel on designated phones. The Court finds that since Potter at least has the option to communicate with his counsel by phone or in writing, he has failed to raise a meritorious argument that the government's motion would violate his Sixth Amendment right to effective assistance of counsel.

### C. The Motion to Revoke Communication Privileges Does Not Unduly Burden Potter

The Court must now explore whether there are less burdensome means of satisfying the government's concerns rather than prohibiting Potter's access to public phones at the Bureau of Corrections. A federal court in Tennessee analyzed "the minimum level of telephonic communication [with those outside the prison]

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 10

constitutionally required for inmate[s]," but found it unnecessary to answer the inquiry because, *inter alia*, other federal courts have decided what constitutes constitutionally required telephonic communication in various ways. *Wooden v. Norris*, 637 F. Supp. 543, 555-56 & n.4 (M.D. Tenn. 1986). This Court also refuses to decide what constitutes constitutionally required telephonic communication with those outside the prison. That granting the government's motion would still allow Potter to communicate with counsel on designated phones at the Bureau of Corrections at least does not contemplate a cognizable claim for ineffective assistance of counsel under the Sixth Amendment. *See Barr*, 2007 U.S. Dist. LEXIS 34796, at *3-4. In addition, Potter will still be able to receive phone calls from the public. Accordingly, the Court finds that the government's motion does not unduly burden Potter, so entertaining less burdensome means of satisfying the government's concerns is unnecessary.

### D. Potter's Denial of Allegations and the Presumption of Innocence as a Pretrial Detainee Do Not Preclude Granting the Motion to Revoke Communication Privileges

The Court now turns to the issue of whether Potter's denial of allegations in the second criminal complaint and in the government's motion, as well as his presumption of innocence as a pretrial detainee, preclude this Court from granting the government's motion.

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 11

Potter provides two sentences to support this point, which lack legal authority and factual development (ECF No. 25 at 1). Thus, this Court will not entertain this argument.

### E. Jurisdictional Issues in Granting the Motion to Revoke Communication Privileges that Intertwine with the Court's No-Contact Orders

The Court now moves onto Potter's argument that there are numerous jurisdictional issues in revoking his communication privileges, and that granting the motion intertwines with the Court's no-contact orders. *See Audio Transcript of Hearing*, October 5, 2020 at 9:28:54 to 9:29:06. Potter also asserts that since the no-contact orders the Court imposed were unlawful, the motion to revoke communication on invalid orders lacks merit. *Id*. at 9:33:16 to 9:33:38.

On October 15, 2020, the Court issued a Memorandum Opinion and Order denying Potter's motions seeking to vacate the August 28, 2020 no-contact order and to amend September 24th interim order on the ground that they were unlawful (ECF No. 34). The Court found jurisdiction to impose no-contact orders against Potter while in pretrial detention as part of its inherent authority to protect victims and witnesses. *Id*. at 8. The Court also found persuasive authority for issuing no-contact orders enforceable during pretrial detention. *Id*. at 10-14. The Court agrees with Potter that the motion to revoke his communication privileges and the no-contact orders intertwine, but this fact supports the Court granting the former.

*United States of America v. Yamini Potter*
3:20-mj-00061
Memorandum Opinion and Order
Page 12

WHEREFORE, it is now **ORDERED**:

The government's Motion to Revoke Defendant's Communication Privileges (ECF No. 7) Modified by the Clarification[10] is **GRANTED**.

Potter is hereby **ORDERED** to refrain from using the Bureau of Correction's public telephone, or other means of outside communication, to initiate contact with anyone, but he may use the Bureau of Correction's designated phone to communicate with counsel only. This order does not preclude third parties from contacting Potter by any means, including by public telephone, in person, or in writing.

ENTER:

Dated: October 22, 2020

/s/ George W. Cannon, Jr.
GEORGE W. CANNON, JR.
MAGISTRATE JUDGE

---

[10] The government modifies by clarification its Motion to Revoke Defendant's Communication privileges at the September 24, 2020 hearing and in its Reply to Defendant's Opposition to Motion to Revoke Defendant's Communication Privileges (ECF No. 19 at 1). Namely, the government no longer seeks to "preclude [Potter's] communication with his counsel of record using the [Bureau of Corrections's] designated attorney phones or other approved means." *Id*. at 1.